# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **Case No. 05-10037-GAO** |
| **MARK E. BUTLER** | ) | |
| **Defendant** | ) | |

## GOVERNMENT'S RESPONSE TO MOTION FOR REVOCATION OF DETENTION ORDER

The government hereby respectfully opposes defendant Butler's motion for revocation of Magistrate Judge Sorokin's detention order dated March 24, 2006 ("Order"), because Magistrate Judge Sorokin properly found, after a lengthy hearing, that Mr. Butler had not rebutted the presumption of detention in this matter.

## I.  FACTS[1]

Magistrate Judge Sorokin held a detention hearing in this matter that included the cross-examined testimony of four witnesses and argument over the course of three days.  Although probable cause was established by the Superseding Indictment, two government witnesses testified to the seizure of methamphetamine, drug ledgers, and false identifications from the defendant in incidents approximately five months apart (September 2005 and February 2006), and a lay witness testified to having purchased methamphetamine from defendant over the course of approximately nine months (September 2004 through June 2005).  An additional government witness testified that over the course of nine months (January to October 2005),

---

[1]The government notes that the transcript is not yet available for the proceedings, and accordingly relies exclusively on the documentary exhibits and the Magistrate Judge's opinion. The government specifically disputes the characterizations by defendant of the testimony  as inaccurate.  The government respectfully seeks leave to file a supplemental brief upon production of the transcripts.

Butler had deposited more than $200,000 into a Bank of America bank account which was a front account for Butler's methamphetamine supplier.

## II.  <u>STANDARD OF REVIEW</u>

In <u>United States v. Tortora,</u> 922 F.2d 880, 882 (1st Cir. 1990), the First Circuit held that a District Judge must conduct a "<u>de</u> <u>novo</u> review" of a contested detention order issued by a magistrate judge. 922 F.2d at 883 n. 4.  Requiring the district court to conduct a <u>de</u> <u>novo</u> review does not mean that it must conduct a <u>de</u> <u>novo</u> hearing.  Nor does it mean that the district court must disregard the magistrate's fact finding and the inferences to be drawn therefrom.  The thrust of <u>Tortora</u> is thus that the district court should not act as if it were an appeals court reviewing the acts of a district court and thereby constrained by the evidence presented and fact finding conducted below.   <u>Tortora</u> mandates that the district court must instead make an independent determination of the detention decision, unconstrained by the limits of the magistrate's conclusions or the record established in the original detention hearing.

In <u>United States v. Koenia</u>, 912 F.2d 1190 (9th Cir. 1990), one of the cases on which <u>Tortora</u> relies, the court aptly summarized the district court's power and obligation in reviewing a magistrate's detention order:

> [t1he district court . . . need not] start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings under a "clearly erroneous" standard of deference.  It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate. The point is that the district court is to make its own "de novo" determinations of facts, whether different from or an adoption of the findings of the magistrate.

912 F.2d at 1193.[2]

### III.  ARGUMENT

The burden of establishing that no condition or combination of conditions will reasonably assure a defendant's appearance for trial rests on the government.   However, when the defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption.  United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987).   While the burden of persuasion always lies with the government, "even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but rather retains evidentiary weight . . . ." Id.

The reason for this presumption in drug cases is addressed by the First Circuit in the Palmer-Contreras case:

> [T]his presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries.   Forfeiture of even a large bond may be just a cost of doing business, and hence drug traffickers pose special flight risks.

Id. at 17.

Pursuant to 18 U.S.C. § 3142(g), in order to determine whether a defendant has overcome

---

[2] Other cases cited by Tortora are to the same effect.  See, e.g.,  United States v. Hurtado, 779 F.2d 1467,1480 (11th Cir. 1985) (district court must conduct an independent review); United States v. Maull, 773 F.2d 1479, 1481-2 (8th Cir. 1985) (district court to conduct de novo review of detention issue, and could hold hearing; court also empowered to accept stipulated facts in such a de novo proceeding); United States v. Delker, 757 F.2d 1390, 1393-94 & n. 3 (3d Cir. 1985) (district court required to make independent review of magistrate's detention order, although "[i]n most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate" and "may in an informed exercise of discretion, determine whether additional evidence is desirable" beyond what was presented to the magistrate).

the presumption of dangerousness to the community and of flight risk, the Court must look to

four factors:

> (g) Factors to be considered. – The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning –
>
>> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>>
>> (2) the weight of the evidence against the person;
>>
>> (3) the history and characteristics of the person, including –
>>
>>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>>
>>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In this case, as Magistrate Judge Sorokin found, the defendant has not rebutted the

presumption of danger and risk of flight.  Analyzing the first two factors from § 3142(g), Butler

has been charged with trafficking in large quantities of methamphetamine, a highly addictive

drug, and the Magistrate Judge characterized the evidence against him as "establish[ing]

convincingly . . . that Butler was dealing in substantial quantities of methamphetamine for an

extended period of time."  Opinion at 6.  He was arrested in February 2006 with approximately

half a pound of methamphetamine.  Opinion at 3.  A lay witness testified to seeing Butler open a

package containing between 1 and 2 pounds of methamphetamine.  Opinion at 3.  The same

witness testified that he himself had purchased 1 ounce every week or two from Butler,

escalating to 4 to 5 ounces every week or two by the time that he was arrested.[3]  Opinion at 3.

The $200,000 that Butler deposited into the methamphetamine supplier's bank account translates

into more than 7.27 kilograms of methamphetamine,[4] more than 14 times the quantity that

triggers the maximum penalty threshold for drug distribution determined by Congress.

Therefore, the first two factors of  § 3142(g) weigh heavily against the defendant.  As noted in

United States v. Palmer-Contreras, "[when] the evidence against defendants is strong, the

incentive for relocation is increased."  Id. at 18.

    With regard to the third factor of § 3142(g), the nature and character of the person, his

family and financial resources, history of drug or alcohol abuse, record of appearance at court

proceedings, and whether he was on release from other charges at the time of the instant conduct,

this factor also weighs heavily against defendant Butler. As Magistrate Judge Sorokin properly

found, Butler has no roots in the community.  "He is not employed; he has no family here and is

not living with any family."  Opinion at 6.  By his own admission, he is a drug addict.

Defendant's Memorandum at 8.  At the time of his arrest on the instant charges, he was on

---

[3]The government respectfully submits that, contrary to the assertions of defendant, the lay witness specifically testified that he was "recruited" by the defendant.  The government will supplement this memorandum with citations to the transcript when the transcript is available.

[4]Butler's own documents, see, e.g., Exhibit 6, establish that the rate was 1 pound for $12,500.  The deposits exceed $200,000.  See Exhibits 16 & 21. At this rate, Butler was paying for more than 16 pounds of methamphetamine, which at 2.2 pounds per kilogram, equals 7.272 kilograms, or 7,272 grams.  This amount, without including the methamphetamine actually located during the searches of Butler's effects during his September 2005 and February 2006 arrests, falls into the middle of the range for a Base Offense Level of 36 for methamphetamine (mixture).

release from two prior drug cases that he had accrued in the previous nine months.  For the

Eastham case, he had defaulted twice.  Each of these factors weighs in favor of detention.

The final factor of § 3142(g) is the nature of the risk that defendant poses to himself and

to others.  Here, the overwhelming evidence at the hearing was that for more than a year, Butler

has supported himself through the sale of methamphetamine.  He claims no assets, but for more

than a year, he was engaged in "a well-thought-out drug business of substantial scale."  Opinion

at 6.  Butler was undeterred from continuing in this business despite the arrest of his customer in

June 2005, as shown by the methamphetamine in his possession at his own arrest in September.

He was likewise undeterred by his own arrest in September, as demonstrated by the half-pound

of methamphetamine found in his apartment in February.  This factor therefore weighs in favor

of detention.  As the First Circuit has observed, "Congress has made it clear that an 'especially

significant' danger to the community is the risk that the drug network will continue to function

while defendant awaits trial."  United States v. Arroyo-Reyes, 32 F.3d 561, 1994 WL 440654

(1st Cir. 1994) (unpublished).  Butler continued in the methamphetamine business after his

Philadelphia customer was arrested in June of 2005, and he continued after he himself was

arrested in September 2005.  There is nothing in Butler's prior conduct to overcome the

Congressional concerns of continued drug distribution pending trial.  Moreover, the report of

PreTrial Services indicates that defendant poses a serious danger to himself as well.[5]

Accordingly, this factor, like the other three factors in 3142(g) weighs in favor of detention.

---

[5]The defendant asserts repeatedly that PreTrial Services recommended release to drug treatment.  That is not consistent with the government's understanding of the recommendation.  It is the government's understanding, based on the written report of PreTrial Services dated March 24, 2006, that the information gathered by PreTrial Services indicated a serious risk of non-appearance and a danger to the community and to the defendant himself.

Butler's arguments fail to counter the presumption of flight and dangerousness.  Given the strength of the government's case, and the mandatory ten year sentence facing Butler, Butler has a tremendous incentive to flee.  <u>Palmer-Contreras</u>, 835 F.2d at 18; <u>United States v. Dillon</u>, 938 F.2d 1412, 1415 (1st Cir. 1991) (risk of flight not rebutted in light of mandatory minimum sentence); <u>United States v. Pierce</u>, 107 F. Supp. 2d 126, 128 (D. Mass. 2000) ("extremely strong incentive to flee based upon the length of the prison term he faces under the charges pending against him and the likelihood of his conviction.")  Information about Butler's character and other characteristics does not overcome that presumption.   Indeed, defendant Butler has put forward nothing to overcome the presumption in favor of detention.  Accordingly, the Magistrate Judge's finding that Butler is a risk of flight and a danger to the community is wholly consistent with First Circuit law.

## IV.  CONCLUSION

In summary, the Bail Reform Act presumes detention for individuals charged with serious drug crimes, until and unless the individual provides some evidence to defeat the presumption that drug dealers are a serious risk of flight and a danger to the community.  The presumption applies to this case, pursuant to 18 U.S.C. § 3142(e), because the defendant is subject to a minimum sentence of ten years and a maximum sentence of life in a case involving the Controlled Substances Act.  The evidence against Butler is overwhelming, and defendant has no roots in the community and a history of default on the drug cases that were pending at the time of his arrest.  There is, quite simply, nothing in the record to rebut the convincing evidence that this defendant is a risk of flight, a danger to the community, and a danger to himself.  Accordingly, the Magistrate Judge properly found that detention is appropriate in this case, and

his order should not be revoked.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Nancy Rue
        Nancy Rue
        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 /s/ Nancy Rue
NANCY RUE
Assistant United States Attorney

Date:   April 24, 2006