UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA    )**
**     v.                     )    Case No. 05-10037-GAO**
**MARK BUTLER,                 )**
**     Defendant              )**


           **GOVERNMENT'S RESPONSE TO MOTION OF MARK BUTLER**
              **TO SUPPRESS EVIDENCE SEIZED 2/9/06**

                             **FACTS**

     The following facts are taken from the transcript of testimony at Defendant Mark Butler's detention hearing on March 21, 2006. [Page references indicated in brackets.]

     1.   On February 9, 2006, Boston police officers went to the residence of Mark Butler to execute an arrest warrant. [I-39]

     2.   From prior surveillance of Butler's apartment, law enforcement knew that persons visiting the apartment were as likely to walk as to drive.

     3.   The residence is on the third floor, and the building has more than one entry.

     4.   Other units in the building were occupied at the time of the arrest.

     5.   Cars associated with either Butler or guests parked on the street.  It was not possible to determine from automobile traffic or parking whether Butler was home or whether he had visitors.

     6.   At that, Butler had been under investigation by various law enforcement agencies for large scale trafficking in

methamphetamine over a multi-state area.   Id.

    7.   The warrant issued as a result of a default by Butler from a court appearance.  Butler was in default from a September 15, 2005 charge of distribution of methamphetamine in Eastham.

    8.   Methamphetamine tends to make users paranoid.

    9.   The behavior of methamphetamine users is erratic.

    10.  The mood of a methamphetamine user can change suddenly for no apparent reason.

    11.  Methamphetamine, as found in the Boston area in early 2006, is a "club drug," frequently used in group situations.

    12.  Methamphetamine is an expensive drug, costing upwards of a thousand dollars for an ounce, and several thousand dollars for a pound.

    13.  The officers knocked on the door of Butler's apartment. Id.

    14.  They heard a commotion inside the apartment.  Id.

    15.  It took Butler some time to get to the door of the apartment.  Id.

    16.  Once Butler opened the door of the apartment, there was an odd smell.  Id.

    17.  The officers arrested Butler.  Id.

    18.  Butler was provided with Miranda warnings immediately upon his arrest. [I-54].

    19.  The officers asked Butler what the smell was. [I-39]

20. Butler responded that he was smoking something. The officers asked what he was smoking, and he responded that he was "smoking meth." Id.

21. The officers did a protective sweep of the apartment. Id.

22. The officers saw a pipe, a scale, and marijuana while in the apartment. [I-40]

23. The officers secured the apartment and obtained a search warrant. [I-41-42]

24. At booking, an inventory was taken of Butler's belongings. The inventory included a cellular telephone.

25. An officer reviewing the items taken from Butler noted that the battery in the cellular phone was nearly out.

26. The officer made notes of the text messages in the telephone and the address book to the extent possible prior to the battery dying.

27. The battery died while the officer was at the letter "c" in the address book.

## ARGUMENT

### A.  The Police Had a Right to Perform A Protective Sweep.

Law enforcement agents arresting an individual in a residence have the right to perform a protective sweep of the residence without a warrant when "articulable facts[,] taken together with the rational inferences from those facts, would

warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 334 (1990)).  Such a sweep is permissible because of the risk that "unseen third parties in the house" may pose to the arresting officers.  Officers have an interest in "taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested, is not harboring other persons who are dangerous and who could unexpectedly launch an attack."  Id. at 333.

The United States Court of Appeals for the First Circuit has extended this rule to arrests that take place outside the home, recognizing that an arrest that occurs outside a home can pose an equally serious threat to arresting officers as one that occurs in the home."  United States v. Lawlor, 406 F.3d 37, 41 (1st Cir. 2005).  Such a search is lawful if "sufficient facts exist that would warrant a reasonably prudent officer to fear that the area in question could harbor an individual posing a threat to those at the scene."  Id.

At the time that the police arrested Butler, law enforcement knew that he was connected with a large scale methamphetamine trafficking organization.  He was identified as a dealer involved in trafficking in New York and Philadelphia, as well as Boston.  He trafficked in pound quantities of a drug that sells for in excess of a thousand dollars per ounce.

4

In advance of approaching Butler's door, the police could not discern from outside the residence whether Butler was alone in the apartment.  The residence is on the third floor, and the building has more than one entry.  Other units are occupied, and therefore residents of those apartments could move back and forth within the building without being seen from outside the residence.

When police first approached the door, they knocked, but Butler did not arrive immediately.  They police heard noise inside the apartment while they waited for the door to be opened.  A reasonable police officer would anticipate a number of scenarios from the noise: person(s) inside the apartment could be hiding; person(s) inside the apartment could be concealing evidence; person(s) could be escaping the apartment.  When Butler did open the door, a smell attracted the attention of the officers, and Butler stated that he had been smoking methamphetamine.  Given that methamphetamine is an illegal drug, this level of candor to a uniformed police officer serving an arrest warrant increased rather than dispelled the perception of danger caused by the noise inside the apartment and the delay.  Methamphetamine is known by any experienced officer to cause paranoia and erratic behavior in its users.  It is also commonly, although by no means exclusively, used in group situations.

On this record, the government respectfully submits that the

police clearly had "articulable facts which, when taken together with the reasonable inferences from those facts, would warrant a reasonably prudent officer in believing that the [residence] harbor[ed] an individual posing a danger to those on the arrest scene." Lawlor, 406 F.3d at 41.  From the delay, the noise, and the admitted methamphetamine use, combined with known tendencies of methamphetamine users, a reasonable officer would have fear that another individual was in Butler's residence, and that that individual "could unexpectedly launch an attack."  Id.

**B.  Butler's statements, given after Miranda warnings, are admissible.**

The government disputes Butler's assertion of fact.  The government asserts that Butler was advised of his Miranda rights at the time of his arrest.  Accordingly, the government asserts that Butler's statements should not be suppressed.

**C.  The Text Messages from Butler's Phone were obtained incident to arrest or pursuant to an inventory search.**

Butler's phone was reviewed at the police station as a search incident to arrest or an inventory search.  See generally "Government's Response to Motion of Mark Butler To Suppress Evidence Seized 9/15/05."  Accordingly, the government respectfully submits that those messages should not be suppressed.  Defendant has noted that he will supplement the record on this matter, and the government respectfully requests an opportunity to respond more fully at that time.

**D.   The New Jersey Warrant is Valid.**

The government disputes defendant's conclusion as to the New Jersey warrant. Additionally, the government notes that the evidence in New Jersey would have been discovered based on independent legal means, and therefore is admissible pursuant to the inevitable discovery doctrine. <u>Nix v. Williams</u>, 467 U.S. 431, 440-48 (1984); <u>United States v. Scott</u>, 270 F.3d 30, 42-43 (1st Cir. 2001).

## CONCLUSION

The police in this case appropriately performed a protective sweep, sought a warrant, and seized contraband. Accordingly, defendant's motion to suppress should be denied.

         Respectfully submitted,

         MICHAEL J. SULLIVAN
         United States Attorney


By:   /s/ Nancy Rue
      NANCY RUE
      Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

         /s/ Nancy Rue
         Nancy Rue
Date: November 6, 2006     Assistant United States Attorney